IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| GLOCK, INC. <br><br> Plaintiff, <br><br> v. <br><br> ISSC HANDELS GMBH, and <br> AUSTRIAN SPORTING ARMS, LLC <br><br> Defendants. | Civil Action No.: <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, GLOCK, Inc. ("GLOCK") states its Complaint against Defendants ISSC Handels GmbH ("ISSC") and Austrian Sporting Arms, LLC ("ASA"), as follows:

### PARTIES

1. Plaintiff GLOCK is a Georgia corporation having its principal place of business at 6000 Highlands Parkway, Smyrna, Georgia 30082. Through its related companies, GLOCK is engaged in the business of designing, manufacturing, marketing, and selling firearms, namely, the internationally-famous family of GLOCK pistols.

2. Upon information and belief, Defendant ISSC is an Austrian corporation having its principal place of business at Hannesgrub 3, A – 4910 Ried

im Innkreis, Austria. ISSC has an established relationship with Defendant ASA to export, distribute, and sell ISSC-manufactured M22 pistols (the "M22") in the United States, including the State of Georgia.

3.  Upon information and belief, Defendant ASA is a Delaware corporation having its principal place of business at 91 West Main Street, Ware, Massachusetts and has an established relationship with Defendant ISSC to import, distribute and sell the M22 in the United States, including the State of Georgia.

4.  In marketing, selling and distributing the M22 into the United States, and the State of Georgia, Defendants have committed unlawful acts, including, but not limited to, federal trade dress infringement and unfair competition, federal dilution, common law trade dress infringement and unfair competition, and deceptive trade practices as more fully set forth herein within the Northern District of Georgia.

## JURISDICTION AND VENUE

5.  This is an action for injunctive relief, damages, treble damages, and an award for attorneys' fees for infringement of a federally-registered trade dress under 15 U.S.C. § 1114(1); trade dress infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution of a famous trade dress under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(a); and for unfair

competition in violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et. seq.*, and the common law. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and under the doctrine of pendent jurisdiction pursuant to 28 U.S.C. § 1338(b). This Court has jurisdiction over the Defendants pursuant to the provisions of the Georgia long arm statute, O.C.G.A. § 9-10-91.

6. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. §§ 1391 and § 1400(b).

## FACTS COMMON TO ALL COUNTS

7. In 1982, Gaston Glock developed the first commercially successful polymer-frame semi-automatic pistol, the GLOCK 17. It has been well publicized that the GLOCK 17 was regarded as a radically new design in virtually every respect. It revolutionized the industry. The new, unique appearance of the GLOCK 17 featured an external design and image that was a significant departure from the traditional metal design widely used over the last century by other pistol manufacturers, such as Smith & Wesson, Heckler & Koch, and Colt.

8. GLOCK was formed in 1985 to assemble and market the GLOCK 17 in the United States. Subsequently, Gaston Glock developed a complete family of GLOCK pistols, including the Model 17, Model 18, Model 19, Model 20, Model

3

21, Model 22, Model 23, Model 24, Model 25, Model 26, Model 27, Model 28, Model 29, Model 30, Model 31, Model 32, Model 33, Model 34, Model 35, Model 36, Model 37, Model 38, and Model 39. The family of polymer-frame pistols is herein collectively referred to as the "GLOCK pistols." Despite some initial skepticism from gun traditionalists, the GLOCK pistols became enormously successful in the United States with consumers and especially with law enforcement agencies. By 1991, more than 3,500 federal, state, and local law enforcement agencies and departments in the United States had adopted or approved GLOCK pistols for duty use. By 1996, GLOCK had captured over one half of the United States law enforcement handgun market. GLOCK pistols are presently used by over sixty-five percent (65%) of federal, state, and local law enforcement agencies across the country, including the Federal Bureau of Investigation, Drug Enforcement Agency, and the Federal Bureau of Prisons.

9.  Gaston Glock's original design and concept for the GLOCK 17 has remained virtually intact for the entire line of GLOCK pistols since its creation. All of the various GLOCK pistols share the same distinctive design and appearance as the original Model 17.

## **THE GLOCK TRADE DRESS**

10. GLOCK pistols feature a distinctive appearance and overall image, which represents a significant departure from the traditional pistol designs used by other pistol manufacturers. GLOCK pistols include a polymer frame with a slide top lever built flush into one side of the frame and a small slide lock positioned in an angled groove on both sides of the frame above the trigger. The slide and the upper part of the polymer frame on GLOCK pistols have a distinctive blocky and squared-off shape, with polymer sights carrying a white dot on the top of the slide and serrations on each side of the rear portion of the slide. The serial number plate is embedded on the underside of the front part of the frame. The interface between the slide and the frame on GLOCK pistols includes a distinctive gap. The bottom portion of the frame includes both the handgrip and trigger guard. The handgrip of GLOCK pistols includes distinctive serrations on the front and rear faces and both sides of a GLOCK pistol handgrip are slightly raised and textured. The front face of the handgrip includes two raised finger ridges. At the transition between the rear of the gun and the handgrip is a slightly projecting down-turned lip. The trigger guard of a GLOCK pistol is also a blocky and squared-off shape with distinctive serrations on the front face. This previously unknown selection of non-functional design elements presents an inherently distinctive appearance and has acquired

secondary meaning. True and correct copies of photographs of representative models of the family of GLOCK pistols are attached as **Exhibit A.**

11.     The trade dress of GLOCK pistols has acquired a substantial level of source-identifying capability, *i.e.*, secondary meaning. This secondary meaning is the result of, among other things, the widespread popularity and use of GLOCK pistols by law enforcement agencies and civilians throughout the United States, GLOCK's extensive marketing and promotional efforts, and extensive third-party publicity.

12.     GLOCK is the owner of a federal trademark registration for its trade dress in international class of goods 13, Reg. No. 2,807,747, registered on January 27, 2004 by the United States Patent and Trademark Office (USPTO). A true and correct copy of the registration is attached as **Exhibit B.** The description of the mark is as follows:

> The mark consists of the three dimensional overall configuration of a semi-automatic pistol having a blocky an[d] squared-off shape as viewed from the side, the front, and the rear. The vertical lines at the rear of the slide indicate ridges. The stippling is a feature of the mark and not intended to indicate color. The dotted lines indicate features that are not claimed as a part of the mark. Neither the shape of the notch on the rear sight nor the circular shape of the interior of the barrel are claimed as a part of the mark. The shape of the trigger guard and the shape, location, and a position of the trigger safety tab are claimed as a part of the mark, but no claim is

6

>  made to the shape of the trigger separate from the trigger safety tab.

Registration No. 2,807,747 is incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. §1065 and, therefore, GLOCK has the exclusive right to use its trade dress. GLOCK also holds a second registration, Reg. No. 2,807,745. This registration features a different grip configuration than the current GLOCK pistols, as well as different from the configuration on the M22. Registration Nos. 2,807,747 and 2,807,745 are part of a family of famous GLOCK marks, including the work mark GLOCK (Reg. No. 1,691,390), which is also incontestable; GLOCK design mark (Reg. No. 3,037,263); the mark "GLOCK PERFECTION" (Reg. No. 2,440,268), and many other word and design marks.

13.  Acceptance of GLOCK pistols in the marketplace was immediate, and sales of GLOCK pistols have continued to grow since their introduction. GLOCK has promoted the sale of the GLOCK pistols by extensive advertising in newspapers and magazines as well as through appearances at trade shows and other events throughout the United States. True and correct copies of representative advertisements for GLOCK pistols are attached as **Exhibit C**. Newspapers and magazines throughout the United States have included feature articles, authored by third parties, about the GLOCK pistols, and such pistols have been generally recognized in the press as the leading polymer-frame semi-

automatic pistol in the world-wide market. Such articles have featured the distinctive appearance and the unique operation of GLOCK pistols. True and correct copies of articles featuring or discussing GLOCK pistols from several leading handgun magazines are attached as **Exhibits D(1) – D(9)**.

14. Another form of third-party publicity of GLOCK pistols has been in television and movies. For example, GLOCK pistols have been featured in movie productions such as U.S. MARSHALS, TOMORROW NEVER DIES, THE FUGITIVE, DIE HARD II, DIE HARD III, and television productions such as X-FILES, NYPD BLUE, LAW & ORDER, and NY UNDERCOVER. Such widespread publicity has contributed to GLOCK pistols being among the most recognizable pistols in the world.

15. GLOCK has developed valuable goodwill in the trade dress of the GLOCK pistols, and the relevant public, including the public within the Northern District of Georgia, have come to know, recognize, and identify the distinctive look and appearance of a pistol originating from GLOCK.

16. As a result of extensive sales, marketing, and promotion by GLOCK and others, the trade dress of the GLOCK pistol has become famous.

17. GLOCK has not licensed or granted to Defendants the authority, permission, or any other right to make, use, offer for sale, or sell a pistol that

copies or otherwise utilizes the trade dress of the GLOCK pistol or that resembles a GLOCK pistol.

## DEFENDANTS' ACTIVITIES

18. In or about September 2009, representatives of GLOCK first became aware that ISSC was manufacturing the infringing M22 model in Austria and that ASA was importing and distributing the M22 in the United States. GLOCK has become aware that ASA has sold the M22 in the Northern District of Georgia. The M22, which is .22 caliber, substantially duplicates the distinctive look and appearance of the GLOCK pistols. True and correct copies of photographs of the M22, including photographs from ISSC's and ASA's websites, are attached as **Exhibit E**.

19. The M22 presents a distinctively blocked and squared-off shape, identical in appearance to GLOCK pistols. Upon information and belief, the M22 was designed by Wolfram Kriegleder (who had previously designed another .22 caliber pistol, the Walther P22, which looks nothing like any GLOCK pistol) exclusively for ISSC to manufacture and import into the United States market and timed to coincide with the 2009 SHOT Show in Orlando, Florida. The M22 is a polymer-frame semi-automatic pistol. The slide and upper part of the polymer frame of the M22 pistols has a blocky and squared-off shape with sights on top –

exactly resembling GLOCK pistols. The M22 includes an ejection port and an extractor similar in both appearance and location to the GLOCK pistols. Just like the GLOCK pistols, the handgrip of the M22 includes distinctive serrations on the front and rear faces and both sides of the M22 pistol handgrip are slightly raised and textured – again, just like GLOCK pistols. The front face of the handgrip includes two raised finger ridges (like GLOCK pistols) and, at the transition between the rear of the gun and the handgrip, the M22 features a slightly projecting down-turned lip that is identical to GLOCK pistols. The trigger guard of the M22 pistol is also a blocky and squared-off shape with serrations on the front face mirroring GLOCK pistols. The M22 is very much a GLOCK clone.

20. The M22 embodies the external design, the distinctive appearance, and the overall image of the GLOCK pistols so as to cause a likelihood of confusion as to the source of the M22. True and correct copies of photographs showing various views of the M22 side-by-side with a GLOCK pistol are attached as **Exhibit F**.

21. By manufacturing, exporting, importing, marketing, selling, and/or distributing the M22, Defendants falsely indicate to the public that the Defendants and/or the M22 are in some manner connected with, sponsored by, affiliated with,

or approved by GLOCK. Defendants' conduct infringes and dilutes the exclusive trade dress rights of GLOCK in the GLOCK pistols.

22.     Upon information and belief, ISSC exports and sells the M22 to ASA who, in turn, imports, sells, and distributes the infringing M22 to distributors in the State of Georgia, and specifically in the Northern District of Georgia and in this division.

## COUNT I

### Infringement of GLOCK's Federally Registered Trade Dress

23.     Plaintiff GLOCK reasserts, realleges, and incorporates herein by reference Paragraphs 1-22 of the Complaint.

24.     By manufacturing and selling the M22 pistol, Defendants have infringed Plaintiff GLOCK's registered trade dress in its semi-automatic pistols. Defendants' aforesaid acts falsely represent that Defendants are affiliated, connected, or associated with Plaintiff GLOCK and tend to describe falsely that Defendants' goods emanate from or are sponsored or approved by GLOCK.

25.     Upon information and belief, Defendants have willfully promoted their business in interstate commerce and intentionally traded upon GLOCK's reputation and goodwill, thereby causing confusion or mistake or deception among purchasers as to the true origin, source, sponsorship, or affiliation of the Defendants' goods, all

to the Defendants' profit and to GLOCK's monetary damage. GLOCK has been, and will continue to be, irreparably damaged by Defendants' use of such confusingly similar trade dress.

26. Defendants' acts, as set forth above, violate GLOCK's rights in its registered trade dress pursuant to 15 U.S.C. § 1114(1).

27. If not enjoined by this Court, Defendants will continue their acts of trade dress infringement as set forth above, which acts have caused, and will continue to cause, GLOCK immediate and irreparable harm. Pursuant to 15 U.S.C. §1116 and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendants' unlawful activities. GLOCK has no adequate remedy at law.

28. As a result of Defendants' infringement of GLOCK's registered trade dress, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §§1117-1118, GLOCK is entitled to a judgment for: (1) Defendants' profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendants turn over to GLOCK for destruction all of the M22 pistols and all means of making same.

## COUNT II

### Federal Unfair Competition: Violation of Section 43(a) of the Lanham Act

29. Plaintiff GLOCK reasserts, realleges, and incorporates herein by reference Paragraphs 1-22 of the Complaint.

30. By manufacturing and selling the M22 pistol, Defendants have misappropriated Plaintiff GLOCK's trade dress in its semi-automatic pistols. Defendants' aforesaid acts falsely represent that Defendants are affiliated, connected, or associated with Plaintiff GLOCK and tend to describe falsely that Defendants' goods emanate from or are sponsored or approved by GLOCK, all of which constitute violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

31. Defendants' unauthorized use of the GLOCK trade dress is willful and intentional.

32. If not enjoined by this Court, Defendants will continue their acts of unfair competition in the unauthorized use of the GLOCK trade dress, which acts have caused, and will continue to cause, GLOCK immediate and irreparable harm. Pursuant to 15 U.S.C. §1116 and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendants' unlawful activities. GLOCK has no adequate remedy at law.

33. As a result of Defendants' acts of unfair competition, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §§1117 and 1118, GLOCK is entitled to a judgment for: (1) Defendants' profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendants turn over to GLOCK for destruction all of the M22 pistols and all means of making same.

## COUNT III

**Federal Trade Dress Dilution: Violation of Section 43(c) of the Lanham Act**

34. Plaintiff GLOCK reasserts, realleges, and incorporates herein by reference Paragraphs 1-22 of the Complaint.

35. As a result of the actions set forth herein, Defendants have, without the consent of GLOCK, used in commerce a trade dress which dilutes the distinctive quality of GLOCK's famous trade dress. Such use by Defendants began after GLOCK's trade dress became famous, and is in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

36. Defendants' acts of trade dress dilution are willful and intentional.

37. If not enjoined by this Court, Defendants will continue their acts of trade dress dilution, which acts have caused, and will continue to cause GLOCK

immediate and irreparable harm. Pursuant to 15 U.S.C. §1125(c)(1) and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendants' unlawful activities. GLOCK has no adequate remedy at law.

38. As a result of Defendants' acts of unfair competition, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §1117, GLOCK is entitled to a judgment for: (1) Defendants' profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendants turn over to GLOCK for destruction all of the M22 pistols and all means of making same.

## COUNT IV:

### Unfair and Deceptive Trade Practices: Violation of Georgia Law

39. Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-22 of the Complaint.

40. Defendants, by the aforesaid acts, have engaged in conduct that creates confusion and misunderstanding, which acts constitute unfair and deceptive trade practices in Georgia.

41.     Defendants' aforesaid acts are in violation of Sections 10-1-370 *et seq.*, including Sections 10-1-372 of the Official Code of Georgia Annotated ("O.C.G.A.") and the common law.

42.     As a result of Defendants' unfair and deceptive trade practices in Georgia, Defendants have monetarily profited, and GLOCK has been monetarily damaged and is likely to be continuously damaged by Defendants' aforesaid acts.

43.     Unless enjoined and restrained by this Court, Defendants will continue their acts of unfair and deceptive trade practices in Georgia, thereby deceiving and confusing the public and causing GLOCK immediate and irreparable harm, damage and injury. GLOCK is entitled to an Order of this Court enjoining Defendants' unlawful activities pursuant to O.C.G.A. § 10-1-373(a). GLOCK has no adequate remedy at law.

44.     As a result of Defendants' willful unfair and deceptive trade practices in Georgia, GLOCK is entitled to recover its damages, costs and attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, GLOCK, Inc. prays for the following relief against the Defendants, jointly and severally:

(1) That Defendants, their corporate officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

(a) from using the GLOCK, Inc. trade dress in connection with the advertising, promotion, offering for sale, or sale of any pistol, or other product, not associated with GLOCK, Inc.;

(b) using any reproduction, counterfeit, copy or colorable imitation of the GLOCK, Inc. trade dress in connection with the advertising, promotion, offering for sale, or sale of any pistol, or other product, not associated with GLOCK, Inc.;

(c) employing any words, symbols, or conduct that suggest Defendants' products are authorized, sponsored, endorsed or approved by, or otherwise suggesting any connection between Defendants and GLOCK, Inc.;

(d) engaging in false designation of origin, false descriptions, false advertising, false representations, or from otherwise engaging in unfair or deceptive or otherwise competing unfairly with GLOCK, Inc.;

(e) engaging in conduct that dilutes the distinctive quality of GLOCK Inc.'s trade dress; and

(f) making any description of representation, including by words or symbols, that Defendants' products are in any way affiliated, associated, authorized, sponsored, endorsed or otherwise connected with GLOCK, Inc.

(2) That Defendants be ordered to turn over to GLOCK for destruction all automatic pistols, automatic pistol components, signs, prints, print material, advertisements, and other representations and means for reproducing the same, in their possession, custody or control bearing the trade dress of GLOCK, Inc., or any colorable imitation thereof, and to obliterate, destroy, or remove all other uses or designations confusingly similar to GLOCK, Inc.'s trade dress.

(3) That Defendants be directed to file with the Court and serve on GLOCK, Inc., no later than thirty (30) days after the issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

(4) That an accounting be conducted and judgment be rendered against Defendants for:

(a) all profits received by Defendants, directly or indirectly, from their sales and/or advertising of any product(s) bearing GLOCK, Inc.'s trade dress or any trade dress confusingly similar thereto;

(b) all damages sustained by GLOCK, Inc. on account of, *inter alia*, Defendants' trade dress infringement, unfair competition, false designation of origin, false description or representation, injury to GLOCK, Inc.'s business reputation and goodwill, and/or dilution of GLOCK, Inc.'s trade dress pursuant to 15 U.S.C. §1117 *et. seq.*, and Defendants' deceptive trade practices unfair competition under Georgia law; and

(c) actual compensatory damages in an amount not presently known, but to be computed during the pendency of this action.

(5) That the actual damages assessed against Defendants be enhanced as provided by 15 U.S.C. § 1117, and that punitive damages and/or increased damages be awarded to GLOCK, Inc. as provided by Georgia law.

(6) That Defendants be required to pay to GLOCK, Inc. monetary damages to be used for corrective advertising to be conducted by GLOCK, Inc.

(7) That GLOCK, Inc. have and recover its costs in this suit, including its reasonable attorneys' fees and expenses.

(8) That GLOCK, Inc. have such other and further relief as the Court may deem just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff GLOCK, Inc. demands a trial by jury of all issues triable of right by a jury.

This 15th day of January, 2010.

*/s/ Dan R. Gresham*
Dan R. Gresham
Georgia Bar No. 310280
Cynthia J. Lee
Georgia Bar No. 442999
Melissa Rhoden
Georgia Bar No. 143160
**THOMAS, KAYDEN, HORSTEMEYER & RISLEY, L.L.P.**
600 Galleria Parkway
Suite 1500
Atlanta, Georgia 30339
Telephone: (770) 933-9500
Facsimile: (770) 951-0933

Attorneys for Plaintiff GLOCK, Inc.